SPONSELLER *v.* KIMBALL.

1. CANCELLATION OF INSTRUMENTS—MORTGAGES—DEEDS—FRAUD—HUSBAND AND WIFE.

In a suit by husband and wife to set aside a mortgage and subsequent conveyance on the ground of fraud, in that the wife's separate property was included without her knowledge or consent, the finding of the court below that there was no fraud on the part of defendant, *held,* justified by the record, which shows that if any fraud was practiced it was by the husband alone.

2. SAME—WIFE BOUND BY MORTGAGE AND CONVEYANCE WHERE HER NEGLIGENCE ENABLED HUSBAND TO PERPETRATE A FRAUD.

If a wife executed a mortgage and subsequent conveyance, knowing them to be such, without reading them or knowing their contents, thereby enabling her husband to fraudulently include therein property belonging to her, she is bound thereby, because her negligence enabled the husband to perpetrate a fraud on the mortgagee and grantee.

3. CONTRACTS—ONE EXECUTING WRITTEN INSTRUMENT BOUND TO KNOW CONTENTS.

The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge, and if he cannot read, he should have a reliable person read it to him, and his failure to do so is negligence which estops him from voiding the instrument on the ground that he was ignorant of its contents, in the absence of circumstances fairly excusing his failure to inform himself.

Appeal from Hillsdale; Chester (Guy M.), J. Submitted January 9, 1929. (Docket No. 17, Calendar No. 34,074.) Decided March 29, 1929.

Bill by George F. Sponseller and another against Ora C. Kimball and others to vacate judgment in

Ignorance or carelessness as affecting right to equitable relief from a contract by which one has been overreached, see annotation in 5 L. R. A. (N. S.) 799.

summary proceedings, to restrain action thereunder, and for general relief; treated as a bill to set aside mortgage and subsequent conveyance on ground of fraud. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Merton Fitzpatrick, Robert Crary,* and *Glen L. Fisher,* for appellants.

*Paul W. Chase,* for appellees.

Fead, J. In 1903 Mrs. Sponseller acquired 120 acres of land in Hillsdale county, and by 1919 had reduced the mortgage thereon from $2,700 to $1,200. In 1919 her husband made a deal with Kimball to purchase the adjoining 200 acres and three lots in Moscow. Sponseller had no money to pay on the purchase and on August 13th the deal was closed by deed from Kimball to plaintiffs by the entireties and mortgage back for $11,056, executed by both plaintiffs to Kimball, covering the land purchased and Mrs. Sponseller's 120 acres. The sum covered the whole purchase price and also the $1,200 mortgage, which Kimball paid shortly thereafter. Plaintiffs lived on Mrs. Sponseller's 120 acres until about 1922, when they moved to Moscow, but continued to work the land.

Plaintiffs made some payments on the mortgage but became in arrears. In 1922 Sponseller was selling gravel from the premises, Kimball commenced suit and had decree for the gravel money to apply on the mortgage. Plaintiffs continuing in arrears, Kimball threatened action, and on May 24, 1924, to save foreclosure, plaintiffs executed to Kimball a quitclaim deed of the whole premises, plaintiffs retaining possession until January 1, 1925, and having the right to repurchase if they could raise the

money.  On November 25, 1924, Sponseller paid Kimball $2,000 and took a receipt for the amount to apply on the purchase price of the 320 acres.

In April, 1926, Kimball filed a bill in chancery to restrain defendants from cutting timber, asked that the $2,000 paid in 1924 be decreed to be rent, prayed accounting and possession at the expiration of the' period for which the court should find the rent paid. Plaintiffs· appeared by counsel and an agreement of settlement, drafted by their own attorney and signed by both of them, was entered into with Kimball on June 3, 1926, by which plaintiffs expressly affirmed the quitclaim deed of May 24, 1924, disclaimed title or interest in the premises, agreed that the $2,000 would pay rent to July 24, 1926, agreed to vacate the premises on that date, and Kimball agreed to sell to them before that time, for cash, at a price to be arrived at but not to exceed $13,000.

On July 24, 1926, Kimball executed to Sponseller a lease for 60 days and extension of time to purchase to August 3d, at $12,100.  No purchase having been made, on October 23, 1926, Kimball commenced summary proceedings against Sponseller before a circuit court commissioner for possession of the premises, and had judgment of ouster November 4th. A writ of restitution was issued and plaintiffs' son, who was occupying the house, was ejected.

This bill was filed November 16, 1926, to vacate the judgment in summary proceedings, to restrain action thereunder, and for general relief.  The parties have treated it as a bill to set aside the mortgage and subsequent conveyance of Mrs. Sponseller's 120 acres on the ground of fraud, and it will be considered as amended to embrace that issue.

The circuit court found, and we concur, that there was no fraud on the part of Kimball in taking the

mortgage and subsequent conveyance. If any fraud was practiced on Mrs. Sponseller, it was by Sponseller alone.

Plaintiffs' present claim is that Mrs. Sponseller did not know her land was included in the mortgage, the quitclaim deed, the contract of 1924, and the settlement of 1926. Her claim was supported by her own assertion and by the testimony of her husband that he did not tell her her land was to be included in the mortgage because she opposed the purchase, he knew she would not sign, and he thought he could pay the debt in a short time and she would know nothing about it. The only extrinsic circumstances supporting the claim were that her husband's father had given her a piece of property in Indiana in addition to what she and her husband owned; that the title was taken in her name to insure a home for herself and her children as her husband's family considered him improvident; and that she traded the Indiana property for the 120 acres, taking title to the latter in her own name for the protection of the family. The children were grown up in 1919.

On the other hand, her land was described in the instrument by designation as 120 acres as well as by governmental descriptions and all of the conveyances were read to her. She gave no excuse for not discovering that her property was included, except that she did not notice the description. The record is entirely barren of any indication that Sponseller or anyone else attempted to prevent Mrs. Sponseller from reading any of the instruments or otherwise hinder her discovering that her land had been included in them. She and her husband discussed the purchase before it was made, and she stated she opposed it, but she never indicated that opposition to Kimball, her attorney, or anyone else. She knew

her husband had no money to pay on the purchase. She had participated in deeds and mortgages, and it is hardly reasonable that she thought the deal would be made without down payment or additional security. After the mortgage to Kimball, she paid no more attention to the principal or interest on the $1,200 mortgage on her land, although prior thereto she had been making payments on it. After the quitclaim deed to Kimball, he constructed an extension on the barn on the 120 acres at a cost of several hundred dollars. It was not claimed that her husband or anyone else made any statements to her that the mortgage would cover only the land purchased. In the bill of complaint, she and her husband alleged the execution of the mortgage and other instruments covering her property and made no claim or allegation that she had not known her land was included therein. As bearing on Sponseller's statement that he expected to pay the mortgage in a short time, the insistence in the bill is significant that it was agreed the mortgage should run for ten years, the payments not to exceed $200 per year, and that plaintiffs had paid such amounts in full. The evidence strongly indicates that Mrs. Sponseller voluntarily executed the mortgage and other instruments, knowing her property was included.

Aside from this question of fact, we think the circuit court correctly disposed of the case on the legal principle that, if Mrs. Sponseller did not know her lands were included in the mortgage and other instruments, she is, nevertheless, bound by them because her negligence enabled her husband to perpetrate a fraud on Kimball, if her land was wrongfully included.

It is the fact, as contended by plaintiffs, that a mortgage given on her separate property by a married woman to secure her husband's debts, if procured by his fraud, may not be valid in the hands of a mortgagee even though the latter was not a party to the fraud, *Smith* v. *Osborn*, 33 Mich. 410; *Citizens' Savings Bank* v. *Darling*, 110 Mich. 227; *Peters* v. *Burt D. Howe Co.*, 237 Mich. 261; and where a person is induced to sign a deed by a trick, not knowing or intending to execute such instrument, it is a forgery and not enforceable, even in the hands of a subsequent purchaser without notice. *Horvath* v. *National Mortgage Co.*, 238 Mich. 354 (56 A. L. R. 578). These authorities are not applicable because here the consideration for the mortgage ran to Mrs. Sponseller as well as to her husband and she knew that she was executing a mortgage. The situation reverts to the effect of her negligence in failing to inform herself of the contents of the instrument.

The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge. If he cannot read, he should have a reliable person read it to him. His failure to do so is negligence which estops him from voiding the instrument on the ground that he was ignorant of its contents, in the absence of circumstances fairly excusing his failure to inform himself. 6 R. C. L. pp. 624, 625; *Warren* v. *Federal Life Ins. Co.*, 198 Mich. 342; *Weidner* v. *Northway Motor, etc., Co.*, 205 Mich. 583.

In *Sanborn* v. *Sanborn*, 104 Mich. 180, the court held (syllabus):

"A deed will not be set aside at the suit of a wife who joined with her husband in its execution to secure his creditor, which indebtedness the wife had

advised her husband to secure, on the ground that she was ignorant of the contents of the deed, where it appears that no misrepresentations were made to her at the time she executed the deed, and that she made no inquiry as to its form or contents.''

At bar, Mrs. Sponseller executed not merely one but four instruments, all of which were read to her and whose purpose she understood. The consideration for the mortgage ran to her as well as to her husband, and the inclusion of her property was an integral part of the transaction. No representations were made to her. Her negligence, if it was merely negligence, was not excusable by reason of fraud, deceit, misrepresentations, or other misconduct. To permit her to rely upon her own negligence would work a fraud on defendants.

The decree will be affirmed, with costs.

NORTH, C. J., and FELLOWS, WIEST, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.