*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VALERIE HARRIS,

Plaintiff-Appellant,

v

BEE PROPERTY MANAGEMENT, INC., and
COMPASS ACQUISITIONS, LLC,

Defendants-Appellees.

UNPUBLISHED
March 9, 2023

No. 359619
Wayne Circuit Court
LC No. 20-001463-CZ

Before: RICK, P.J., and M. J. KELLY AND RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's finding of no cause of action following a bench trial in this action in which plaintiff raised a number of claims against defendants relating to foreclosed property that she previously owned, including a claim to quiet title to the property and a claim of fraud. On appeal, plaintiff challenges the trial court's finding that she did not have an equitable mortgage and was a month-to-month tenant. Plaintiff also challenges the court's finding that she failed to prove her claim of fraud. We affirm.

## I. BACKGROUND

Plaintiff purchased a home in Detroit in May 2008 for $65,000 and secured a purchase money mortgage for the amount of the purchase price plus an additional amount for home improvements. Plaintiff defaulted on the mortgage loan and the lender foreclosed. The property was sold for $95,000 at a sheriff's sale on April 9, 2015. Plaintiff was unable to secure the funds required to redeem the property. During the summer of 2015, plaintiff was introduced to Michael Baumhaft, the owner of defendant Bee Property Management, Inc. (Bee), by a broker who came to her home and discussed ways to save the property from foreclosure before the redemption period expired. Plaintiff made an arrangement with Baumhaft. Baumhaft would provide the funds to redeem the property, purchase the property from plaintiff, and give plaintiff an option to purchase the property.

Baumhaft solicited Jeffrey Van Dorn, the owner of Compass Acquisitions, LLC (Compass), to invest in plaintiff's property. On August 28, 2015, Compass made a written offer

to purchase the property for $130,000.[1] On August 31, 2015, Bee entered an option agreement with plaintiff. The option agreement gave plaintiff the exclusive right to purchase the property for $160,000 within 24 months of the signing of the agreement as long as she was making timely monthly payments. Plaintiff was required to pay $2,250 in monthly option payments and to pay the property taxes and the monthly homeowner's association (HOA) fees. The agreement also gave plaintiff the right to possess the property during the 24-month option period if all payments were made. Bee had the right to cancel the agreement and initiate eviction proceedings if option payments were not made.

Baumhaft brought a cashier's check in the amount of $130,000 to the September 8, 2015 closing on the property. At the closing, the offer to purchase was modified. The purchaser was changed from Compass to Bee[2] and the sale price was changed to $111,500.[3] Plaintiff signed and accepted the purchase offer. Plaintiff also signed a warranty deed conveying the property to Bee. Bee quitclaimed its interest in the property to Compass at the closing.

Plaintiff was unable to secure the funds to exercise the option to purchase and the option agreement expired.[4] Plaintiff continued to reside in the home. At some point she stopped paying the property taxes and the HOA fees. Around October 2019 plaintiff stopped paying the $2,250 monthly payment. In January 2020, plaintiff received a notice to quit the premises.

On February 7, 2020, plaintiff filed an amended complaint against Bee and Compass. Relevant to this appeal, plaintiff sought to quiet title to the property on the ground that the September 8, 2015 warranty deed, along with the option agreement, "were intended to be used as a mortgage and not as a deed absolute on its face." According to plaintiff, the option agreement was a "two-year loan agreement with a balloon payment 'at the end.' " She alleged that under the equitable mortgage doctrine she had fee simple title to the property "free and clear of any and all claims of Compass." Plaintiff also raised a claim of fraud, intentional misrepresentation, and deceit. Plaintiff alleged that Baumhaft misrepresented the transaction to her and committed fraud when he told her that "she was not divesting herself of any rights, title, or interest in the property." She alleged that she relied upon the representations to her detriment and was "in the precarious position of losing her Property and her equity."

After a bench trial, the trial court issued extensive written findings of fact and conclusions of law. With respect to plaintiff's quiet title claim, the court found, in relevant part, that the warranty deed that plaintiff signed was not an equitable mortgage. The court found that plaintiff

---

[1] This amount included the redemption amount of $97,023.60, settlement charges to seller of $4,028.36, delinquent HOA fees of $10,145.30, a broker fee of $18,500, and cash to seller of $302.74.

[2] Apparently, Bee did not have authority to act on behalf of Compass. There is no dispute that Compass provided the $130,000 cashier's check for the purchase.

[3] The broker fee of $18,500 was not included in the modified sale price.

[4] The option agreement was executed on August 31, 2015, and expired by its terms on August 31, 2017.

did not exercise the option to purchase within 24 months, that she did not have a written lease, and that she was a month-to-month tenant of Compass. The court also found no cause of action with respect to plaintiff's claim of fraud, intentional misrepresentation, and deceit. The court found that Van Dorn did not make any representations to plaintiff to induce her to enter into any contract as it was undisputed that Van Dorn did not have any contact with plaintiff until December 2018, three years after the closing of the sale of the property. The court also found that plaintiff could not rely upon representations made by Baumhaft because the documents plaintiff signed were clear and unambiguous. Lastly, the court found that plaintiff did not prove damages. The court found that plaintiff "resided in the property and had use of the premises in exchange for her monthly payments."

## II. STANDARD OF REVIEW

"This Court reviews a trial court's factual findings in a bench trial for clear error, and reviews its conclusions of law de novo." *Trahey v City of Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2de 97 (2000). An action to quiet title is an equitable action that is also reviewed de novo. *Beach v Twp of Lima*, 489 Mich 99, 106; 802 NW2d 1 (2011).

## III. QUIET TITLE

An action to quiet title is equitable in nature and is "available to a party in possession of real property who [seeks] to clear the property's title as against the world." *Adams v Adams*, 276 Mich App 704, 711; 742 NW2d 399 (2007). In an action to quiet title, the plaintiff has the initial burden of establishing a prima facie case of title. *Special Prop VI v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). The plaintiff must present evidence that the plaintiff acquired and now possesses a legal or equitable interest in the property in question. *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999). We conclude that the trial court properly found no cause of action with respect to the quiet title claim because plaintiff failed to establish that she acquired and possessed some interest, legal or equitable, in the property.

The statute that govern actions to quiet title, MCL 600.2932, provides, in pertinent part:

> (1) Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

The undisputed evidence established that plaintiff signed a warranty deed conveying the property to Bee. "The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge." *Christy v Kelly*, 198 Mich App 215, 217; 497 NW2d 194 (1992), quoting *Sponseller v Kimball*, 246 Mich 255, 260; 224 NW 359 (1929). Thus, "[i]t is well established that a person cannot avoid a written contract on the ground

that he did not attend to its terms, did not read it, supposed it was different in its terms, or that he believed it to be a matter of mere form." *Rowady v K Mart Corp*, 170 Mich App 54, 60; 428 NW2d 22 (1988). Specifically, "a person who signs and executes an instrument without inquiring as to its contents cannot have the instrument set aside on the ground of ignorance of the contents." *Christensen v Christensen*, 126 Mich App 640, 645; 337 NW2d 611 (1983).

MCL 565.151 provides that a title by warranty deed

shall be deemed and held to be a conveyance in fee simple to the grantee, his heirs and assigns, with covenant from the grantor for himself and his heirs and personal representatives, that he is lawfully seized of the premises, has good right to convey the same, and guarantees the quiet possession thereof; that the same are free from all incumbrances, and that he will warrant and defend the title to the same against all lawful claims.

"A person having all possible rights incident to ownership of a parcel of property has the entire bundle of sticks or a fee simple title to the property." *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 348; 820 NW2d 242 (2012) (citation omitted). "Important rights flowing from property ownership include the right to exclusive possession, the right to personal use and enjoyment, the right to manage its use by others, and the right to income derived from the property." *Id*. (citation omitted). "A warranty deed conveys the entire bundle of rights to the property from the grantor to the grantee in fee simple; it also includes the grantor's covenant that the grantor has good, marketable title and guarantees to the grantee the right of quiet possession." *Id*. (citation omitted).

This Court's objective when interpreting a deed is to give effect to the parties' intent as manifested in the language of the instrument. *Mich Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005). The primary consideration is the language employed in the conveyance. Here, plaintiff employed a warranty deed and used the phrase "conveys and warrants" to describe the transfer. MCL 565.151 provides that "any conveyance of lands worded in substance as follows: 'A.B. conveys and warrants to C.D. (here describe the premises) for the sum of (here insert the consideration),' . . . shall be deemed and held to be a conveyance in fee simple to the grantee . . . ." The conveying language in the instrument supports a fee simple transfer consistent with the statute. Plaintiff failed to establish a legal interest in the property.

Plaintiff asserts that the warranty deed, together with the option agreement, demonstrated that the parties intended for Bee to have an equitable mortgage, as opposed to a full conveyance of the property.

"Michigan has long recognized equitable mortgages," *Eastbrook Homes, Inc*, 296 Mich App at 351, and "a court of equity can declare a deed absolute on its face to be a mortgage," *Taines v Munson*, 19 Mich App 29, 36; 172 NW2d 217 (1969). An equitable mortgage may be declared in order to circumvent the statute of frauds. *Schultz v Schultz*, 117 Mich App 454, 458; 324 NW2d 48 (1982). "Generally an equitable mortgage will be imposed if it is shown that there was an intention to place a lien on the real estate or a promise that the real estate would be used as security but for some reason the intended purpose was not accomplished[.]" *Eastbrook Homes, Inc*, 296

Mich App at 352 (quotation marks and citation omitted). The person asserting that a deed absolute on its face is actually "a mortgage bears a heavy burden of proof" and "must furnish a preponderance of evidence whereby it is made 'very clear' to the fact-finder that the parties did not contemplate an absolute sale." *Grant v Van Reken*, 71 Mich App 121, 126; 246 NW2d 348 (1976).

"Although no set criterion has been established, the controlling factor in determining whether a deed absolute on its face should be deemed a mortgage is the intention of the parties." *Koenig v Van Reken*, 89 Mich App 102, 106; 279 NW2d 590 (1979). The court may glean the requisite intent from the circumstances regarding the transaction, "including the conduct and relative economic positions of the parties" and the existence of a discrepancy between the value of the property and the price fixed in the alleged sale. *Id*. "Under Michigan law, it is well settled that the adverse financial condition of the grantor, coupled with the inadequacy of the purchase price for the property, is sufficient to establish a deed absolute on its face to be a mortgage." *Id*.

Plaintiff was unable to redeem the property. The clear and unambiguous language of the warranty deed demonstrates that plaintiff conveyed her interest in the property to Bee. The purchase price covered the amount to redeem the property, plaintiff's closing costs, and the delinquent HOA fees, and was adequate. The clear and unambiguous language of the option agreement gave plaintiff an option to purchase the property within 24 months. The option agreement also gave plaintiff the right to possess the property during the 24-month option period as long as she continued to make the monthly option payments. Together, the documents clearly demonstrate that plaintiff sold her interest in the property to Bee and that she had an option to purchase the property under the terms established in the option agreement. There is nothing to suggest that there was "an intention to place a lien on the property or a promise that the property would be used as security but for some reason the intended purpose was not accomplished[.]" *Eastbrook Homes, Inc*, 296 Mich App at 352. The warranty deed establishes that the parties intended the transaction to operate as a conveyance—not as a loan.[5] While plaintiff contends that the monthly option payments were evidence of loan "installment payments," she provided no evidence that the payments were anything more than her option obligations while being allowed to reside on the premises during the term of the option. Plaintiff has failed to show that the trial court's findings were erroneous or that the court made an error of law. Accordingly, we do not disturb the trial court's finding that the deed was not an equitable mortgage.

Relatedly, plaintiff argues that the trial court clearly erred by finding that plaintiff was a month-to-month tenant. We disagree. As discussed above, plaintiff did not have a legal or equitable interest in the property. Plaintiff did not dispute that she did not have a written lease.[6]

---

[5] Plaintiff contends that defendants defrauded her by "stealing her money, title, and her equity in her primary residence" during the redemption period. However, at that time, the property had already been foreclosed, and plaintiff does not dispute that she was unable to redeem the property.

[6] Michigan's statute of frauds regarding the sale or lease of land is found in MCL 566.106 and MCL 566.108. MCL 566.106 provides:

Plaintiff had an option agreement that also allowed her to possess the premises during the option period. Under these circumstances, the trial court properly determined that no lease had been entered into and that plaintiff was a month-to-month tenant.[7]

## IV. FRAUD

Plaintiff argues that the trial court erred by finding that plaintiff failed to prove her claim of fraud. We disagree.

To succeed on a claim of actionable fraud, also known as fraudulent misrepresentation, see *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), a plaintiff must demonstrate the following six elements:

> (1) that the defendant made a material representation; (2) that it was false; (3) that the defendant made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that the defendant intended that the plaintiff would act on the representation; (5) that the plaintiff relied on the representation; and (6) that the plaintiff suffered injury as a result of having relied on the representation." [*Lucas v Awaad*, 299 Mich App 345, 363; 830 NW2d 141 (2013).]

"Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Titan Ins*, 491 Mich at 555 (quotation marks and citation omitted).

---

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

Similarly, MCL 566.108 provides, in relevant part:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing. . . .

[7] Even if the option agreement was effectively a lease with an option to purchase, the option agreement expired. Plaintiff thereafter would become a month-to-month tenant. See, e.g., *TCG Detroit v Dearborn*, 261 Mich App 69, 88; 680 NW2d 24 (2004) (holding that a tenant under a lease agreement becomes a "holdover tenant" by remaining in a leased space after the expiration of the lease agreement).

A plaintiff alleging fraud must state with particularity the circumstances constituting the fraud. MCR 2.112(B)(1). Plaintiff argues on appeal that Baumhaft committed actionable fraud by entering into the option agreement with plaintiff while knowing that he lacked legal authority to enforce the terms of the option agreement against Compass. Plaintiff did not plead this allegation in support of her fraud claim in her complaint. Rather, she alleged that Baumhaft made the "false material representation" that plaintiff was not divesting herself of any rights, title, or interest in the property by conveying the property by warranty deed to Bee. The trial court found that plaintiff could not rely on any alleged misrepresentations "as the documents she signed are clear and unambiguous and state she is the 'seller' conveying her property to Bee pursuant to an Offer to purchase." This finding was made in response to plaintiff's allegation of fraud in her complaint. Plaintiff, having changed the focus of her fraud claim on appeal, does not challenge the trial court's finding. Consequently, plaintiff has failed to establish clear error in the trial court's finding.

Nevertheless, even if plaintiff could establish the other five elements of a fraud claim, the trial court did not clearly err by finding that plaintiff failed to show an injury. Plaintiff asserts that she suffered damages because she "took this offer knowing at some point she was going to exercise her option to repurchase the property." But plaintiff was not deprived of her contractual right to exercise the option to purchase before it expired. Plaintiff did not exercise her option to purchase and it expired by its own terms. Plaintiff suffered no injury as a result of any purported fraud related to the option agreement. The trial court did not clearly err by finding that plaintiff failed to establish her claim of fraud.

Affirmed. Defendants, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan

-7-